## BLOK v. UNITED STATES.

### No. 850.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 17, 1949.

Decided Dec. 12, 1949.

William A. Gallagher, Washington, D. C.,
with whom Jos. A. Byrne, Washington, D.
C., was on the brief, for appellant.

Raymond E. Baker, Assistant United
States Attorney, Washington, D. C., with
whom George Morris Fay, United States
Attorney, and Joseph M. Howard, Assistant
United States Attorney, Washington, D. C.,
were on the brief, for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Defendant, who was convicted of petit larceny and sentenced to pay a fine or to serve a term in jail, has appealed upon the ground that part of the evidence upon which she was convicted was obtained during an unlawful search and seizure in violation of the Fourth Amendment to the Federal Constitution.

Testimony in behalf of the Government was to the effect that the defendant, who was employed in one building at the National Bureau of Standards, an office of the Federal Government, telephoned to the office of Miss Eileen Hansen, the chief prosecution witness, in another building, to inquire whether certain duplicating machines located in a room across a corridor from Miss Hansen's office were available for use. Being told that they were, she placed her pocketbook containing small change and personal articles in a drawer of the desk assigned to her use and left for the other building.

Meanwhile, after receiving the telephone call from defendant, Miss Hansen placed her own pocketbook and a wallet containing a $5 bill, a $1 bill, and her operator's permit in a desk drawer located in the duplicating room. Before doing so she made a memorandum of the serial numbers of the bills in the presence of another employee, a Miss Dorothy Pritchard.

Miss Pritchard testified that she saw defendant enter the duplicating room and saw her leave. Miss Pritchard also testified that she saw no one else enter or leave the room and at the time defendant entered it no one else was there.

As soon as defendant left the duplicating room, Miss Hansen looked in the desk drawer in which she had placed her purse and discovered that her purse was then missing. She thereupon called two police officers, who, together with the Bureau of Standards security officer, went directly to the building where defendant worked. They entered an anteroom and one of them brought defendant there and she was told of the charge against her. Thereupon, accompanied by one of the officers, she went to her desk and obtained her own pocketbook. It was examined but found to contain nothing in the way of evidence.

Thereafter, according to the officers, they requested and received permission from defendant to examine the desk used by her. They also asked and obtained permission of her official superior to go through the desk. One of the officers then searched the desk and discovered there a $5 bill, two $1 bills, and Miss Hansen's automobile operator's permit. According to the officer he then returned the bills and the operator's permit to the top drawer and returned to the anteroom and asked defendant to accompany him to her office and open her desk. She did so and in the presence of the officers read the numbers of the bills. The numbers on the $5 bill and one of the $1 bills corresponded to the numbers of the bills "planted" by Miss Hansen.

Subsequently Miss Hansen's wallet was found in the women's lavatory in one building which another Government witness testified that she had seen defendant enter after she had left the mimeograph room and before returning to the building where she worked.

Following her arrest defendant was taken to a police stationhouse and charged with housebreaking, a felony, but in court the only charge that was placed against her was that of petit larceny, a misdemeanor.[1] She was arraigned in court and tried on the day following her arrest.

Before trial defendant's counsel moved the court to rule that the arrest was illegal on the ground that no felony had been committed, and that there was no reasonable ground for believing that a felony had been committed, and that no misdemeanor had been committed in the presence of the officers. This motion was overruled. The money was introduced into evidence without further objection from defendant's counsel, but in a later motion for a new trial objection was made that such evidence should

---

1. No basis for the charge of housebreaking has been stated. No mention of it was made later in the case and the Government has not claimed that the lodging of this charge justified the search.

not have been admitted because it was obtained during an unlawful search of defendant's desk.

The sole ground urged for reversal is that the search of the Government-owned desk used by defendant was in violation of her constitutional rights and hence that the bills seized in connection with that search should not have been admitted into evidence.

The Government meets defendant's claim of unlawful search and seizure, first, by showing that defendant's counsel neither filed a motion to suppress the evidence before trial nor objected to its admission; and, second, by urging that defendant had no such interest in the desk which was searched as would entitle her to the protection of the Fourth Amendment.

■ (1) We have concluded that objection to the admission of the seized evidence was not waived. Defendant's counsel did before trial move the court to rule that the arrest was illegal. This motion was made orally, and we do not have before us its exact phraseology, but its only effective purpose could have been to bring to the court's attention the alleged illegality of the arrest of the defendant and the search of her desk.[2] Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that a motion to return or to suppress such evidence shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion but that the court in its discretion may entertain such a motion at trial or hearing. Here where the arraignment took place one day after the arrest and where the hearing on the motion and the trial were in effect parts of the same proceeding and occurred before the same judge, we believe it clear that defendant's objection was sufficiently brought to the attention of the trial court. Moreover, rule 17(b) of the Criminal Rules of the Municipal Court provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the Court." If the admission of the seized bills into evidence was error, it was a most vital error because it is obvious that such evidence was highly important.

■ (2) In order to determine the issue whether defendant's rights under the Fourth Amendment were invaded by the search of the desk, owned by the Government but assigned to her use, the following considerations must be taken into account: The search was conducted without a warrant. The Government does not and could not claim that the search was made as incident to a lawful arrest. We do not believe that under the circumstances defendant could be held to have consented to the search because she obviously was under compulsion[3] and the evidence was that she was in an advanced state of pregnancy. The Fourth Amendment must be liberally construed to safeguard the right of privacy.[4] The Amendment protects a citizen, whether innocent or guilty, against every unjustifiable intrusion by the Government upon his privacy.[5]

■ Viewed against this background we have concluded that the search of the desk assigned to defendant was such an invasion upon her privacy as to constitute a violation of the Fourth Amendment providing that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

■ The Government urges that since the desk used by defendant was not her property permission for the search given

---

**2.** 22 C.J.S., Criminal Law, § 144; 14 Am. Jur., Criminal Law, § 219. See Davenport v. District of Columbia, D.C.Mun. App., 61 A.2d 486.

**3.** Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690;

Gibson v. United States, 80 U.S.App. D.C. 81, 149 F.2d 381, certiorari denied sub nom. O'Kelley v. United States, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429.

**4.** United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

**5.** Kroska v. United States, 8 Cir., 51 F.2d 330.

by her official superior was sufficient to justify it. The argument is plausible and persuasive. As applied to an inspection of defendant's desk or a search for official documents by her superiors perhaps it would be conclusive. This, however, was not such an inspection or search by her superiors. It was precisely the kind of search by policemen for evidence of crime against which the constitutional prohibition was directed. And even though the desk itself belonged to the Government, we judicially notice that such desks are ordinarily and properly used by officers and employees for keeping their personal effects. This desk was assigned for her use. In this case, it contained defendant's own purse, which she was compelled to open. The Amendment by its terms safeguards from unreasonable search effects and papers as well as persons and their houses. We cannot escape the conclusion, therefore, that the present search without a warrant was illegal, particularly in view of the fact that the desk could have been sealed and ample opportunity afforded for application to a magistrate for a search warrant. The Supreme Court has held that "A search without a warrant demands exceptional circumstances" and where officers are not responding to an emergency "there must be compelling reasons to justify the absence of a search warrant." [6]

The Government in urging that the search of the desk was legal relies strongly upon the authority of United States v. Ebeling, 146 F.2d 254, 257, a 1944 decision of the United States Circuit Court of Appeals for the Second Circuit. In that case the defendant was on trial for conspiring to disclose to German agents information affecting national defense. Certain evidence was taken from a desk used by defendant at Harper Brothers, book publishers, where defendant was employed. Against the claim that the search of the desk was illegal, the court held that the employer was the only one who could object to the search. The court noted in passing that the seized evidence was "probably relevant, but unim-

portant." It cited as authority United States v. Reiburn, 2 Cir., 127 F.2d 525; In re Nassetta, 2 Cir., 125 F.2d 924; United States v. Salli, 2 Cir., 115 F.2d 292, 294. In the first case cited a return receipt for mail addressed to defendant was obtained by subpoena from defendant's landlord, the card never having been in defendant's possession. In the second, an illicit still was found in a house in which defendant, who had a home elsewhere, had slept one night. The court held that advantage of the constitutional provision could not be availed of by one who claimed no interest in the premises searched or property seized. In the third case, involving discovery of a still in a barn, the court disposed of the claim of illegal search and seizure on the ground that it was raised too late but mentioned incidentally and parenthetically that the defendant could not have raised the question anyway because another man was "the only one in possession of the barn, and his was the only constitutional privilege violated."

■ We naturally have given to the decision in the Ebeling case the serious consideration which it deserves; but we have concluded it is not decisive of this case. In another opinion from the same circuit and written by the same judge who wrote the Ebeling opinion, Matthews v. Correa, 2 Cir., 135 F.2d 534, it was held that a "possessory interest" alone seems adequate to permit a person to raise the constitutional issue of search and seizure. Ownership of the premises or property searched has never been held requisite in determining who may object to the search. In the McDonald case, supra, the majority of the Supreme Court found it unnecessary to pass on the rights of a guest of a lodger because it held the search illegal on other grounds, but Justices Jackson and Frankfurter, concurring, held that evidence seized should have been excluded not only as against the lodger but also against his guest. No exact definition of what constitutes the "requisite personal interest" has ever been formulated by the Supreme Court.[7] We believe in the present

---

6. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 193; cf. Accarino v. United States, D.C.Cir.1949, 179 F.2d 456.

7. 63 Harv.L.Rev. 132 (1949).

case defendant had such a possessory interest in the Government desk used by her as to give her immunity from its search by police officers without a warrant.

We do not believe that a distinction may be made upon the basis that defendant was a mere employee. The desks of all who are employed by the Government, cabinet officers, officials, and clerks alike, belong to the Government, and we take it for granted that if a clerk's desk may be searched without a warrant the same is true of the desk of a cabinet officer or other high official. We would hesitate to approve giving such widespread power to police officers, particularly where only a misdemeanor is charged and where search warrants can always be obtained promptly on a proper showing.

While we realize doubt exists in the present case, we believe it wiser to resolve that doubt in favor of defendant and so to liberally construe the Amendment in order to safeguard the right of privacy of defendant particularly where her arrest was admittedly illegal.

Reversed with instructions to award a new trial.