Harry C. WILLIAMS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13119.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 15, 1958.

Decided Jan. 29, 1959.

488

Mr. Walter W. Woodside, Washington, D. C. (appointed by this Court) filed a brief on behalf of appellant and his case was treated as submitted thereon.

Mr. Harry T. Alexander, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Because of the use of evidence obtained by an unlawful search we must again reverse a conviction, this time of housebreaking and larceny, which otherwise might be sustained. We restate the basic principles. The Fourth Amendment prohibits an unreasonable search.[1] A search is unreasonable unless authorized by a valid search warrant, is incident to a valid arrest, or is made in other exceptional circumstances which dispense with the need for a search warrant.

United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. And see Giordenello v. United States, 357 U. S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503, and Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. A search, either with or without a warrant, is also unreasonable when made merely for evidentiary material which "was not the instrument or means by which the crime was committed, the fruits of a crime, a weapon by which escape might be effected, or property the possession of which is a crime." Morrison v. United States, 104 U.S.App.D.C., ——, 262 F.2d 449. Evidence obtained by an unreasonable search may be, and when adequately objected to must be, excluded on the trial of the person whose right of privacy has been violated. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319; United States v. Jeffers, supra.

In the case before us none of the conditions for a reasonable search existed. There was no search warrant and no arrest. No exceptional circumstances are advanced to justify a search without a warrant. Moreover, the search was for evidentiary material within the meaning of Morrison v. United States, supra.

The evidence was that of a police officer obtained by his search of a clothes closet in an apartment. The apartment was described by the officer himself as appellant's home.[2] A written motion to suppress was filed shortly prior to trial. On argument of the motion it developed that the officer was "admitted to the home" and would testify that he observed a coat from which there was missing a button which the prosecution claimed had been recovered at the scene of the crime.

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." U.S.Const. Amend. IV.

2. The apartment was occupied by the appellant, his sisters, his mother, and his two children.

■ The court refused to suppress the evidence, apparently on the ground that it was obtained visually and not physically seized.[3] We are cited to no decision holding, and we can think of no reason why, such evidence is not subject to the rule excluding evidence obtained by an unlawful search. The purpose of the rule, see McDonald v. United States, 335 U.S. 451, 455, 456, 69 S.Ct. 191, 93 L.Ed. 153, covers this case as though the coat itself with the missing button had been illegally seized and offered in evidence.

"We find no basis in the cases or in logic for distinguishing between the introduction into evidence of physical objects illegally taken and the introduction of testimony concerning objects illegally observed. We are aware of no case which makes this distinction."

McGinnis v. United States, 1 Cir., 227 F.2d 598, 603. And see Silverthorne Lumber Co. v. United States, supra, 251 U.S. at pages 391–392, 40 S.Ct. at page 182.

■ The Government suggests on the appeal that the motion to suppress was properly denied because there was no dispute the officer was admitted to the apartment. Admittance to the apartment, however, did not carry with it consent to a search therein. The facts developed at the trial plainly fail to show such consent and it is not to be presumed. The officer testified that appellant's sister answered his knock at the door and admitted him when he stated, "May I come inside and talk to you * * * I don't want to discuss my business out in the hallway, let's go inside where its private." This "admittance" simply is not in fact or in law a consent to a search of the apartment.

The question arises whether after this admittance of the officer the sister went further and gave him permission to search the clothes closet. We need not resolve the question whether she had authority to permit a search of the closet where appellant kept his clothes, see, e. g., Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019, for the testimony fails to show permission to do so. Indeed, the officer did not say he was given permission to search the closet. On his direct examination he testified:

"I went to the defendant's home. * * * I identified myself as a police officer and his sister admitted me into the house. It is an apartment."

On his cross-examination the following occurred:

"Q. [Defense Counsel]: Did she give you permission to search the apartment?

"[Assistant United States Attorney]: I object, once the admission has been made that he entered the apartment, I don't think this is material.

"The Court: Sustain the objection.

"The Witness: She had no objections to my entering the apartment, no."

When the sister testified the following occurred:

"A. [The sister] * * * [The officer] came to my apartment and asked me to let him come in. So I did and he asked me that he wanted to take a look at Harry's clothes. So, by me not knowing, I just let him come in and he looked through Harry's clothes.

"Q. Did he tell you you could refuse to let him in if you wanted to?

"A. No.

"Q. Why did you let him in?

3. The prosecution stated its objection, aside from untimeliness in the filing of the motion, to be "on the theory that the Government has no evidence which it intends to produce in this case that was taken from the premises of the defendant. There was evidence seen at his premises but none recovered. Consequently, the motion to suppress would not lie."

490

"[Assistant United States Attorney]: I object.

"The Court: Objection sustained."

■ Not only was it error to cut off counsel's efforts to develop the circumstances attending the search, but the evidence shows no such consent to any search in the apartment as meets the test laid down by this court in Judd v. United States, 89 U.S.App.D.C. 64, 66, 190 F.2d 649, 651, where it is said:

"[S]uch a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D.C.S.D.Ill.1921, 272 F. 484. The Government must show a consent that is 'unequivocal and specific' (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), 'freely and intelligently given.' Kovach v. United States, 6 Cir., 53 F.2d 639. Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. United States v. Marquette, D.C.N.D.Cal.1920, 271 F. 120. A like view has been taken where an officer displays his badge and declares that he has come to make a search (United States v. Slusser, D.C.S.D.Ohio 1921, 270 F. 818), even where the householder replies 'All right.' United States v. Marra, D.C.W.D.N.Y.1930, 40 F.2d 271. A finding of consent in such circumstances has been held to be 'unfounded in reason'. Herter v. United States, 9 Cir., 27 F.2d 521."

■ Nor will it do to say that the use on the trial of the illegally procured evidence must be overlooked because not the subject of an adequate objection. As we have seen, there was a formal motion to suppress the evidence. This motion was entertained by the court prior to trial in accordance with Rule 41(e) Fed.R.Crim.P., 18 U.S.C.A. Though the facts were not then developed as fully as desirable this must be attributed largely to the position taken by the prosecution, and adopted by the court, that the motion should be denied because no physical evidence was obtained by the search. Since this position was erroneous, and since the admittance of the officer to the apartment to continue his conversation with the sister did not constitute consent by her to a search, the motion was erroneously denied. Subsequent developments at the trial, as we have already seen, did not serve to cure the error. Moreover, when the prosecution at the trial first opened the matter of the search the following occurred:

"[Assistant United States Attorney, in questioning the officer]: Did you make any search of the apartment with regard to the button which you had found prior at the house of Doctor Becker [where the theft had occurred]?

"[Defense Counsel]: I object to that, if the Court please.

"The Court: Overruled."

Even if objections were not precisely and unambiguously made, they were sufficiently made. Indeed, since plain errors affecting substantial rights are involved, we should pass upon the issues even in the absence of any objection. Rule 52(b) Fed.R.Crim.P.

■ It is urged, finally, that the evidence had slight if any effect. This indicates no more than a conviction might well have been obtained by the use only of legal evidence. It does not follow that when evidence procured by the violation of a constitutional right is used the resulting conviction can be affirmed. To so hold would destroy the well settled rule under which such evidence is excluded in aid of the enforcement of the Fourth Amendment. See Agnello v. United States, 269 U.S. 20, 35, 46 S.Ct. 4, 70 L.Ed. 145; Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d

876; Bynum v. United States, 104 U.S. App.D.C. ——, 262 F.2d 465.

Reversed and remanded.

DANAHER, Circuit Judge (concurring separately).

I agree that we must reverse because of the use of evidence obtained in the course of an illegal search. The rules as to searches of private dwellings without a search warrant are so clear and have so often been stated, it would seem to be nothing short of astonishing that we should continue to receive cases presenting the point involved here.

The police may not break into a private home. Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456. They may not force open a window in a landlady's room and thereafter search the apartment of a roomer in a lodging house. McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. "The right of officers to thrust themselves into a home is * * * a grave concern * * *." Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, and only when there are "exceptional circumstances" may "a magistrate's warrant for search * * * be dispensed with." Id., 333 U.S. at pages 14–15, 68 S.Ct. at page 369. The police may not invade a private home by stealth. Gouled v. United States, 1921, 255 U.S. 298, 305, 41 S.Ct. 261, 65 L.Ed. 647. The police may not invade the privacy of a dwelling through falsehood. Gatewood v. United States, 1953, 93 U.S. App.D.C. 226, 209 F.2d 789. Evidence seized by state officers, even without involvement of federal officers, in the course of the illegal invasion of a motel room may not be received in a criminal trial in the courts of the District of Columbia. Hanna v. United States, 1958, 104 U.S.App.D.C. ——, 260 F.2d 723. Officers without a search warrant may not invade a dwelling to search it, even during the absence of the residents. Morrison v. United States, 1958, 104 U. S.App.D.C. ——, 262 F.2d 449. As a prime understatement our opinion in the Morrison case pointed out: "This court has *several times* in recent years examined the problem of the invasion of private dwellings by police officers. The Supreme Court has examined the problem *many times*. We think it is unnecessary to discuss the matter again at any length." (Emphasis added.)

And so it would seem, and yet these cases reach us. If, perchance, the police are not familiar with the rules, the prosecutor is, or is presumed to be. The opinions referred to have cited many other cases which he should recognize. It is the duty of the prosecutor to know not only whom to prosecute, but *when*. Thus, in the course of preparation of his case for trial, absent "exceptional circumstances," seldom found, the prosecutor should appraise the available evidence and should apply the rules. Unhesitatingly he should refuse to go forward with the presentation of evidence which has been obtained by illegal police invasion of a private home. If his case *depends* upon such evidence, he should dismiss the prosecution. If he can present a case without the use of evidence illegally procured, it should not be offered. But if notwithstanding, he insists upon introducing evidence illegally gained through improper invasion of the sanctity of a dwelling, we should tell him once again and for all, we will reverse a conviction, as we now do.

One would have thought after the Morrison opinion, that before these cases reach us involving the point under discussion, the Government would re-assess its position, especially where the rules so emphatically have been reiterated. One more illustration perhaps will serve. In Judd v. United States, 1951, 89 U.S.App. D.C. 64, 190 F.2d 649, the police testified that the accused did not give actual consent to search Judd's home. He merely gave consent to go there. The police were looking for a pair of shoes, not a coat from which a button might be missing. We held specifically in the Judd case that the search and seizure were not permissible and that the evidence was inadmissible. So the conviction was reversed.

In the instant case the officer gained access to the apartment by exhibiting his badge and telling the appellant's sister that he did not wish to discuss his private business out in the hallway. "She had no objections to my *entering* the apartment, no," he testified. There was no slightest suggestion on the record that permission to enter thus gained, even if lawful to that extent, could be equated with authorization to search the appellant's clothes closet. The search without a warrant was clearly illegal. There were no "exceptional circumstances." Evidence gleaned as a result of the unlawful invasion should not have been offered, but since it was received against the appellant, the conviction may not stand.